No. 5306.

## C. McGEHEE *v.* THE STATE.

1. UNLAWFUL ASSEMBLY.—Article 279 of the Penal Code defines an unlaw. ful assembly to be the "meeting of three or more persons with intent to aid each other by violence, or in any other manner, either to commit an offense, or illegally to deprive any person of any right, or to disturb him in the enjoyment thereof."

2. SAME.—Article 289 of the Penal Code provides that, "if the purpose of the unlawful assembly be to prevent any person from pursuing any labor, occupation or employment, or to intimidate any person from following his daily avocation, or to interfere in any manner with the labor or em-ployment of another, the punishment shall be by fine not exceeding five hundred dollars.

3. RIOT.—Article 295 of the Penal Code provides that "if the persons unlaw-fully assembled together do or attempt to do any illegal act, all those engaged in such illegal act are guilty of riot."

4. UNLAWFUL ASSEMBLY—INDICTMENT.—See the statement of the case for a count of an indictment *held* sufficient to charge an unlawful assembly.

5. SAME—CHARGE OF THE COURT.—Although at the time of the alleged commission of this offense it was not per se an offense to stop the running of a train of cars (Murray and Anthony v. The State, 21 Texas Ct. App., 620), it was, nevertheless, under the provisions of Article 279, an offense for two or more persons to meet and co-operate in preventing the con-ductor of a railway train from pursuing his usual avocation and employ-ment of operating the said train. See the opinion for a charge of the court upon the subject *held* correct.

APPEAL from the County Court of Tarrant. Tried below before the Hon. Sam Furman, County Judge.

The conviction in this case was had under the first count of an indictment, which said count reads as follows: "* * one L. Cohn, C. McGehee, W. P. Lee, T. L. Rowland, B. Brooks, T. J. Walsh, B. P. Blakely, N. M. Lovin, J. F. Coppage, C. Dalton, J. Conners, N. Reynolds and Ed. Donohoe, in the county of Tarrant, and State aforesaid, on the first day of April, 1886, with force and arms did unlawfully assemble and meet together, with divers other persons whose names are to the jurors aforesaid as yet unknown, to the number of three hundred and more, with intent to aid each other by violence and intimidation to commit the offense of riot, and to prevent one J. B. Conlisk, by

violence and intimidation, from running and operating a certain steam engine and cars along and upon a certain railway, said railway and engine and train of cars being then and there the property of the Missouri Pacific Railway company, a corporation duly incorporated; said Conlisk being then and there the conductor of said train of cars, and it being then and there the labor, avocation, employment and daily occupation of said Conlisk to run and operate, as such conductor, said steam engine and train of cars along and upon said railway, and to illegally deprive said Conlisk of his right to so run and operate said steam engine and train of cars, and to disturb him in the enjoyment of said right, by violence and intimidation as aforesaid, it being then and there the legal right of said Conlisk to run and operate said train of cars and steam engine, contrary," etc.

The appellant was the only one of the impleaded parties on trial in this case. His punishment was assessed at a fine of one hundred and twenty-five dollars.

The evidence discloses that the appellant was one of a large number of "striking" employes of the Missouri Pacific Railway company, who, on the first day of April, 1886, prevented a freight train of the said Missouri Pacific Railway company, in charge of conductor J. B. Conlisk, from proceeding from the city of Fort Worth, Texas, over said company's railway, by boarding the train, applying the brakes, killing the engine, etc.

No brief for the appellant.

*W. L. Davidson*, Assistant Attorney General, for the State.

White, Presiding Judge. It is provided by Article 279 of the Penal Code that an "unlawful assembly is the meeting of three or more persons with intent to aid each other by violence, or in any other manner, either to commit an offense, or illegally to deprive any person of any right, or to disturb him in the enjoyment thereof;" and by Article 294 it is further provided that "when the persons engaged in any lawful assembly met at first for a lawful purpose and afterwards agreed upon an unlawful purpose, they are equally guilty of the offense defined in Article 279."

Article 289 provides that, "if the purpose of the unlawful assembly be to prevent any person from pursuing any labor, occupation or employment, or to intimidate any person from fol-

lowing his daily avocation, or to interfere in any manner with the labor or employment of another, the punishment shall be by fine not exceeding five hundred dollars."

It is provided by Article 295 of the Penal Code that, "if the persons unlawfully assembled together do or attempt to do any illegal act, all those engaged in such illegal act are guilty of riot." And Article 304 provides that if any person by engaging in a riot shall prevent any other person from pursuing any labor, occupation or employment, or intimidate any other person from pursuing his daily avocation, or interfere in any manner with the labor or employment of another, he shall be punished by confinement in the county jail not less than six months nor more than one year.

In the indictment in this case there were two counts, one for "an unlawful assembly" and one for "riot." Both of said counts, in effect, charged the object of the parties unlawfully assembled to be to prevent and intimidate one Conlisk, who was by occupation and employment engaged in the avocation of a railway conductor, from operating and running the engine and cars in his charge belonging to the Missouri Pacific Railway company along their line of railroad.

Upon the trial appellant was evidently convicted, upon the first count, for violating the law prohibiting an unlawful assembly, because the punishment assessed was a fine of one hundred and twenty-five dollars. Having been found guilty of unlawful assembly and not of riot, it is unnecessary that we should discuss any questions which are or might be raised with regard to the charge of riot.

We are of opinion the count for an unlawful assembly sufficiently charged that offense as defined in the statute. Did the charge of the court to the jury correctly present the law applicable to this phase of the case? Defendant's counsel requested three special instructions, which were refused by the court because in part not the law, and because, in so far as correct, they were substantially embraced in the general charge. In the general charge the jury were told: "If you believe from the evidence introduced on the trial of this case that the defendant, C. Mc-Gehee, and any two or more other persons in Tarrant county, Texas, at any time within two years next before the ninth day day of April, 1886, met together with the intent to aid each other by violence, or in any other manner, in preventing the running and operating of any steam engine or railway train of the Mis-

souri Pacific Railway company, of which one J. B. Conlisk was conductor, whether such intention was carried into effect or not, it will be your duty to find the defendant guilty, and assess his penalty in any sum not more than five hundred dollars." Defendant specially excepted to this charge, and presents his bill of exceptions in the record.

As heretofore stated, the charge in the indictment was that the purpose of the unlawful assembly was to prevent Conlisk from pursuing his occupation or avocation as conductor of a railway train of cars. It is not, or rather was not, at the time alleged, an offense merely to prevent the running of a train of cars (Anthony and Murray v. The State, 21 Texas Ct. App., 620), but under Articles 279 and 289, supra, the offense "of unlawful assembly" consists in illegally depriving any person of any right, disturbing him in the enjoyment of a right, preventing him from pursuing any labor, occupation or employment, or interfering in any manner with the labor or employment of another.

Now, whilst it was no offense per se to prevent a train from running, nor to kill an engine, yet it is an offense to interfere in any manner with the labor and employment of another, and hence, to prevent a train from running and being operated is necessarily to interfere with the labor and employment of a conductor whose duty it is to manage and control the train under his charge, and to direct its operation. We are of opinion the charge quoted above was correct, and that defendant's special counter instruction was properly refused.

There is no other question of moment presented in the record, and because we have found no reversible error the judgment is affirmed.

*Affirmed.*